PER CURIAM: Grant R

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Deborah C. Head, Respondent,
 
 
 

v.

 
 
 
 Grant R. Head, Appellant.
 
 
 

Appeal From Sumter County
 R. Wright Turbeville, Family Court Judge

Unpublished Opinion No. 2006-UP-026
Submitted January 1, 2006  Filed January 12, 2006

AFFIRMED

 
 
 
 Harry C. Wilson, Jr., of Sumter, for Appellant.
 Ryan A. McLeod, of Sumter, for Respondent.
 
 
 

PER CURIAM:  Grant R. Head (Husband) appeals the family courts order finding him in contempt for failure to pay Deborah C. Head (Wife) alimony pursuant to a temporary order.  We affirm.
FACTS
On February 29, 2004, the family court issued a temporary order that required Husband to pay Wife alimony in the amount of $2,000 per month beginning on February 16, 2004.  The court also awarded Husband temporary possession of the marital home and held him responsible for all expenses related to the home.  Additionally, the court ordered Husband to continue the $450 monthly payments on the Wifes vehicle.  Subsequently, Husband filed a motion for reconsideration pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure.  In his motion, Husband requested that the family court eliminate several of his financial obligations, particularly the order to pay alimony.  In the alternative, Husband requested the court reduce the amount of alimony.  After a hearing, the family court denied Husbands motion.  
As a result of Husbands failure to pay alimony for four months, Wife filed a Rule to Show Cause on May 13, 2004, seeking to hold Husband in contempt, requiring him to pay back alimony, and requesting attorneys fees and costs.  After a hearing, the family court found Husband in contempt and sentenced him to an indeterminate period not to exceed six months incarceration unless he paid Wife $8,000 in back alimony and $1,585.08 in attorneys fees.  According to Wife, Husband paid the entire amount in cash within two hours of the hearing.  Husband appeals.  
STANDARD OF REVIEW
A determination of contempt ordinarily resides in the sound discretion of the trial court.  Whetstone v. Whetstone, 309 S.C. 227, 233, 420 S.E.2d 877, 880-81 (Ct. App. 1992).  This court will reverse a trial courts decision regarding contempt only if it is without evidentiary support or is an abuse of discretion.  First Union Natl Bank v. First Citizens Bank & Trust Co. of South Carolina, 346 S.C. 462, 466, 551 S.E.2d 301, 303 (Ct. App. 2001).  An abuse of discretion occurs either when the court is controlled by some error of law or where the order, based upon findings of fact, lacks evidentiary support.  Townsend v. Townsend, 356 S.C. 70, 73, 587 S.E.2d 118, 119 (Ct. App. 2003).
DISCUSSION
I.
Husband argues the family court erred in finding him in contempt.  We disagree.
The power to punish for contempt is inherent in all courts and is essential to the preservation of order in judicial proceedings.  In re Diggs, 344 S.C. 434, 434, 544 S.E.2d 632, 632 (2001).  A courts contempt power arises when an individual willfully disobeys an order of the court.  Id.; S.C. Code Ann. § 20-7-1350 (Supp. 2004) (A party may be found in contempt of court for the willful violation of a lawful court order.).  A willful act is defined as one done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law.  Spartanburg County Dept of Soc. Servs. v. Padgett, 296 S.C. 79, 82-83, 370 S.E.2d 872, 874 (1988) (quoting Blacks Law Dictionary 1434 (5th ed. 1979)).  [B]efore a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct.  Widman v. Widman, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct. App. 2001).  
In a proceeding for contempt for violation of a court order, the moving party must show the existence of a court order and the facts establishing the respondents noncompliance with the order.  Hawkins v. Mullins, 359 S.C. 497, 501, 597 S.E.2d 897, 899 (Ct. App. 2004).  Once the moving party has made out a prima facie case, the burden then shifts to the respondent to establish his or her defense and inability to comply with the order.  Widman, 348 S.C. at 120, 557 S.E.2d at 705.
At the conclusion of the contempt hearing, the court explained that its ruling was based on the following findings:  (1) Husband had the ability to pay the $2,000 per month alimony but had refused to comply with his obligation because he disagreed with the amount set in the temporary order; (2) Husband chose to pay other bills and expenses rather than pay alimony; (3) Husband had the ability to pay given there was evidence that he received cash income and that his tree service business had made a profit for the years 2000 through 2003. 
Because there is evidence to support the courts ruling, we find the court did not abuse its discretion in holding Husband in contempt.[1]    It is undisputed that Husband failed to pay Wife any alimony despite being ordered to do so.  Thus, the question becomes whether his failure to pay was willful.  
Husband acknowledges that he failed to comply with his alimony obligation; however, he contends his failure to do so was not willful given his financial situation.  He asserts he did not have the ability to pay the alimony because his other expenses exceeded his income.   Specifically, he claims his tree service business has not been profitable for the past few years and there is outstanding debt on the parties former photo business.  As a result of these business failures, Husband claims he has incurred significant credit card debt and has had to refinance the marital home and borrow money to reduce the business expenses.  Additionally, in mitigation, Husband points out that in order to avoid repossession of Wifes vehicle he paid the balance of the loan in the amount of $5,800.
Although Husband testified regarding his financial difficulties involving his tree business, he confirmed Wifes testimony that he has received cash payments for his work and that some of the payment checks were made out to him individually as opposed to the business.  He admitted that he had received a late-model Porsche as payment for his work.  Husband also acknowledged that he paid off the $5,800 balance on the Wifes vehicle, which was more than the $3,000 that was required to avoid repossession.  He also testified that he made more than the minimum payments on his credit cards and has kept his utility and cable bills current.  Additionally, Husband admitted that he was current with his child support obligation from a previous marriage and, in fact, had on occasion paid more than the required amount.  Husband also acknowledged that since the temporary order was issued he has paid for the services of a private investigator in preparation for the final divorce hearing.  Finally, the question regarding whether Husbands business was profitable based on his method of depreciating the business assets was a credibility determination for which we defer to the family court.  See Brown v. Malloy, 345 S.C. 113, 119, 546 S.E.2d 195, 198 (Ct. App. 2001) (deferring to family court where decision was dependent on credibility and family court saw the witnesses and heard the testimony).
II.
Husband argues the award of attorneys fees to Wife should be reversed if this court finds the family court abused its discretion in finding Husband in contempt.  In light of our decision regarding the contempt finding, we also affirm the award of attorneys fees and costs to Wife as a contempt sanction.  
Accordingly, the decision of the family court is
AFFIRMED.
 HEARN, C.J., and HUFF and BEATTY, JJ., concur.

[1]   Given this appeal is presented to us in the posture of a contempt action based on a temporary order, we express no opinion as to the final decree of divorce, particularly concerning the award of alimony.  We emphasize that our analysis is strictly confined to determining whether there is evidence to support the family courts decision to hold Husband in contempt.